[Docket No. 26]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

CHERYL WEIGEL,
*executrix of the estate of Fredrick W. Becker*,

           Plaintiff,

       v.

PRUDENTIAL ANNUITIES
LIFE ASSURANCE CORP., *et al.*,

           Defendants.

Civil No. 21-18640 (RMB/MJS)

**OPINION**

**APPEARANCES**

Michael P. Stanton, Esq.
McCrosson & Stanton, PC
200 Asbury Ave.
Ocean City, NJ 08226

     *On behalf of Plaintiff Cheryl Weigel*

Kenneth J. Cesta, Esq.
Carlton Fields, P.A.
180 Park Ave., Suite 106
Florham Park, NJ 07932

Enrique D. Arana, Esq. (*admitted pro hac vice*)
Raina T. Shipman, Esq. (*admitted pro hac vice*)
Carlton Fields, P.A.
2 Miami Central, Suite 1200
700 NW 1st Ave
Miami, FL 33136

     *On behalf of Defendant Prudential Annuities Life Assurance Corp.*

**BUMB, U.S. District Judge**

This matter comes before the Court upon the Motion to Dismiss Plaintiff's Complaint by Defendant Prudential Annuities Life Assurance Corporation ("Prudential"). [Docket No. 26.] As discussed below in greater detail, Plaintiff's claims against Prudential all stem from an annuity contract it issued. Because the contract annuitized pursuant to the contract's clear and unambiguous terms, the Court finds that Plaintiff's Complaint fails to set forth any viable claim against Prudential upon which relief may be granted. Accordingly, the Court will grant Prudential's pending motion and dismiss Plaintiff's claims against it, with prejudice.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Cheryl Weigel ("Plaintiff") initiated the present action upon filing a complaint in the Superior Court of New Jersey Cape May County (Law Division) on September 1, 2017. [Docket No. 1-1.] Plaintiff's claims pertain to an annuity contract between it and Mr. Frederick W. Becker ("Mr. Becker"), who is now deceased and of whose estate Plaintiff is the executrix.[1] In the Complaint, Plaintiff asserts claims against three (3) named defendants:  Prudential, Wells Fargo Clearing Service, LLC, and Robert Cautilli ("Mr. Cautilli"), who she alleges "was an employee, agent and/or servant" of Wells Fargo Clearing Service, LLC at all times and served as Mr.

---

[1] At issue is the initial annuity contract entered into by Mr. Becker, annuity contract number 000430910, as well as annuity contract number CSC000073077, which was the relevant annuity contract number after Mr. Becker's initial contract annuitized. [Docket No. 1-1 ¶ 6.]

Becker's financial advisor.[2] [*Id.* ¶ 35.]

Plaintiff alleges that Mr. Becker purchased an annuity contact from Prudential on or about March 22, 2000, with Mr. Cautilli acting as the seller/broker in the transaction. [*Id.* ¶¶ 7, 10.] Plaintiff alleges that for approximately the next twenty years, Mr. Becker made the required payments under his annuity contract. [*Id.* ¶ 9.] Sadly, Mr. Becker suffered from dementia and passed away on February 29, 2020. [*Id.* ¶ 11.] Plaintiff was Mr. Becker's power of attorney at all relevant times, an arrangement she alleges Mr. Cautilli became personally aware of prior to the annuitization of Mr. Becker's annuity contract with Prudential. [*Id.* ¶¶ 12–13.]

Plaintiff admits that "[t]he [i]nitial [c]ontract had an annuity date of July 1, 2017, which required certain action to be taken prior to that date in order to select a payout option." [*Id.* ¶ 14.] Before the annuity date, Prudential sent two (2) letter notifications to Mr. Becker, first on April 3, and then almost a month later on, May 2, 2017, instructing Mr. Becker to complete the attached "maturity package" and select a payout option. [*Id.*, Exs. A, B.] Mr. Cautilli was also copied on the second, May 2, 2017, letter from Prudential [*Id.*, Ex. B, at 2], but Plaintiff alleges that "Robert Cautilli deviated from the standard of care" when he never contacted Plaintiff, knowing she was Mr. Becker's power of attorney, "at any time regarding

---

[2] Plaintiff also named Wells Fargo Advisors as a defendant in the Complaint, which is a trade name used by Wells Fargo Clearing Service, LLC (properly referred to as "Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors"). For purposes of this Opinion, Wells Fargo Clearing Service, LLC, Wells Fargo Advisors, and Robert Cautilli are referred to collectively as the "Wells Fargo Defendants."

the maturity date and the options available." [*Id.* ¶ 16.] Because there was no response from Mr. Becker, his contract annuitized per the contract's default payment option in August 2017, at which point Prudential began distributing regular payments to Mr. Becker in lieu of the death benefit provided for under his annuity contract. [*Id.* ¶ 19.] Plaintiff alleges that she contacted Mr. Cautilli that same month to ask about the checks, at which time Mr. Cautilli explained to her that Mr. Becker "failed to select payout options therefore the [i]nitial [c]ontract entered default payment options." [*Id.* ¶ 20.] Mr. Cautilli advised Plaintiff to hold off on cashing the checks and contacted Prudential requesting that it reverse the maturity of Mr. Becker's annuity contract, but Prudential declined that request. [*Id.* ¶¶ 21, 24–25.]

Plaintiff alleges that on April 24, 2020, she reached out to Prudential directly to explain what had happened. [*Id.* ¶ 27.] According to Plaintiff, Mr. Becker "was not in any financial hardship that required disbursement of the death benefit checks (default method) in lieu of receiving the full death benefit." [*Id.* ¶ 31.] Plaintiff broadly asserts that none of the defendants took "the necessary or reasonable steps to ensure the Plaintiff was properly notified and/or informed of the consequence" of the default annuitization option. [*Id.* ¶ 33.] More specifically, Plaintiff asserts eleven total causes of action in the Complaint:  Breach of Written Contracts (Count One), Implied Contract/Unjust Enrichment (Count Two),[3] Promissory Estoppel (Count Three), First Party Insurance of Bad Faith (Count Four), Fraud (Count Five),

---

[3] Plaintiff asserts this claim as an alternative claim for relief to Count One.

Negligent Misrepresentation (Count Six),[4] Breach of Fiduciary Duty (Count Seven), Internationally Causing Injuries/Liability for Intended Consequences (Count Eight), Negligence (Count Nine), Negligent Supervision (Count Ten), and Respondeat Superior (Count Eleven). [Docket No. 1-1 ¶¶ 40–107.] Defendants removed the present action to this Court on October 14, 2021, invoking the Court's diversity of citizenship jurisdiction. [Docket No. 1.]

The "Wells Fargo Defendants"[5] filed a Motion to Stay the Proceedings and Compel Arbitration pursuant to the terms of their arbitration agreement with Mr. Becker. [Docket No. 11, Ex. 3.] On November 16, 2021, Prudential requested that the Court hold a pre-motion conference regarding the present motion consistent with the Court's Individual Rules and Procedures [Docket No. 14], which this Court convened with all parties present on December 15, 2021 [Docket No. 24]. That same day, this Court granted leave for Prudential to file the present motion, as well as entered an Order granting the Wells Fargo Defendants' arbitration motion and staying the claims against them. [Docket No. 25.] Thus, the within Opinion is limited to Plaintiffs' claims asserted against Prudential only: Counts One through Eight, as expressly pled by Plaintiff in her Complaint.[6]

---

[4] Plaintiff asserts this claim as an alternative claim for relief to Count Five.
[5] *Infra.* n. 2.
[6] Unlike Counts Nine, Ten, and Eleven, which are specifically alleged against the Wells Fargo Defendants, Counts One through Eight are asserted against each of the named defendants. [Docket No. 1-1 ¶¶ 40–107.]

## II.     JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. At the time of his death on February 29, 2020, Mr. Frederick W. Becker was a resident of Cape May County, New Jersey. [Docket No. 1-1 ¶ 1.] Mr. Becker's estate, of which Plaintiff is the executrix, was also probated in Cape May County, New Jersey. [*Id.*] *See* 28 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent").

At all times relevant to this action, Prudential was and continues to be incorporated and have its principal place of business in Arizona. [Docket No. 1 ¶ 8.] Accordingly, Prudential is a citizen of Arizona. At all relevant times, Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors ("Wells Fargo") was and continues to be a limited liability company organized under the laws of Delaware whose sole member is Wachovia Securities Financial Holdings, LLC. [*Id.* ¶ 9.] The sole member of Wachovia Securities Financial Holdings, LLC is EVEREN Capital Corporation, which is a corporation organized under the laws of Delaware with its principal place of business in North Carolina. [*Id.*] Accordingly, Wells Fargo is a citizen of Delaware and North Carolina. *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) ("the citizenship of an LLC is determined by the citizenship of its members"). At all relevant times, Mr. Cautilli was and continues to be domiciled in Florida. [*Id.* ¶ 10.]

6

Finally, the Court finds that the amount in controversy requirement is satisfied as Plaintiff expressly alleged in the Complaint that the actions of the defendants "cost the estate approximately Three Hundred Thousand ($300,000) Dollars" when Mr. Becker's death benefit was forfeited in lieu of regular payments under his annuity contract with Prudential. [Docket No. 1-1 ¶ 26.]

## III.   LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*first citing Conley v. Gibson*, 355 U.S. 41, 47 (1957); *then citing Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); *and then citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original). Further, "to determine the sufficiency of a complaint," the Court must follow a three-step process:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009) (alterations in original)). A district court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). Thus, "[a] motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (*quoting Twombly*, 550 U.S. at 570).

## IV.    ANALYSIS

### A.    Plaintiff's Argument that Mr. Becker's Annuity Contract with Prudential Includes Ambiguous and Confusing Terms

In opposition to Prudential's pending motion, Plaintiff argues that Mr. Becker's annuity contract with Prudential "should have contained language that was more precise and clearer to [the] insured," such that Mr. Becker could have made out the boundaries of his coverage and understood the default payment option under his annuity contract. [Docket No. 27 (referred to hereafter as "Plaintiff's Brief"), at 13 (citations omitted).] According to Plaintiff, Mr. Becker's annuity contract includes "ambiguous and confusing terms within the forty-one (41) page document," and that such terms were "so ambiguous and confusing, it resulted in the [a]nnuity [c]ontract annuitizing by default." [*Id.* at 5, 6.] Plaintiff contends that Mr. Becker's annuity contract was "not easy to understand to a reasonable person, let alone a person with dementia," and goes as far as arguing that the contract was "not understandable by anyone except a financial expert." [*Id.* at 7, 8.]

Nowhere in her brief, however, does Plaintiff cite any specific language from Mr. Becker's annuity contract with Prudential in support of this argument, nor does she point to any particular provision of the annuity contract as ambiguous or open to multiple interpretations. Instead, Plaintiff's argument is limited to what Mr. Becker's annuity contract with Prudential does *not* say:

> Page two of the [s]chedule states "Annuity Date July 1, 2017". [sic] However, it does not state what that actually means to the insured. No reference that if you do nothing on the date you lose the $600,000.00 death benefit. Nowhere in the 41-page document does it clearly state that if you do nothing on July 1,

2017 (17 yrs. after the annuity was purchased), it will automatically annuitize and the insured will lose the death benefit which he had paid for 17 years to receive the 7.2% interest per year compounded annually.

The [a]nnuity [c]ontract sets forth four payout options, which are very difficult to understand if not a financial expert. Nowhere does it set forth the death benefit amount of $600,000.00 and it does not state that if the annuity annuitizes the death benefit is lost.

[*Id.* at 12 (citations omitted).]

It is fatal to Plaintiff's claims that she is unable to point to any specific contractual provision in Mr. Becker's annuity contact as ambiguous, and instead limits her argument to only the conclusory contention that the annuity contract at issue is "so ambiguous and confusing, it resulted in the [a]nnuity [c]ontract annuitizing by default." [Plaintiff's Brief at 6.] Prudential responds to Plaintiff's generalized criticism by explaining how the annuity contract "clearly set[s] forth the [a]nnuity [d]ate, the payout options, and clearly discloses the death benefit would terminate once annuity payments commence, and there is nothing unfair about an annuity's account value converting into a stream of payments." [Docket No. 28 (referred to hereafter as "Prudential's Reply Brief"), at 1.]

## B.    Mr. Becker's Contract with Prudential Annuitized Pursuant to its Clear and Unambiguous Terms

The Court turns to the operative language of the disputed contract at issue. The Court agrees with Prudential that the relevant provisions of Mr. Becker's annuity contract are clear and unambiguous. Mr. Becker's annuity contract includes a "Schedule," which clearly defines the "ANNUITY DATE" as July 1, 2017. [Docket No. 26-2, Ex. A, at A-10.] The "Annuity Date" is also a defined term in the

next section of the contract, expressly defined at "[t]he date on which annuity payments are to commence." [*Id.* at A-12.] Another key section of Mr. Becker's contract, titled "Annuity Payments," states the following:

> Annuity payments can be guaranteed for life, for a certain period, or for a certain period and life. We make available fixed payments. You may choose an Annuity Date, an annuity option and the frequency of annuity payments. Your choice of Annuity Date and annuity option may be limited depending on your use of the Annuity. You may change your choices at any time up to 30 days before the earlier of: (a) the date we would have applied your Account Value to an annuity option had you not made the change; or (b) the date we will apply your Account Value to an annuity option in relation to the new Annuity Date you are then selecting. You must request this change In Writing.

[*Id.* at A-24.] This section of the annuity contract then goes on to state that "[i]n the absence of an election In Writing [. . .] monthly payments will commence under option 2, described below, with 10 years certain," and provides the four different payout options available:

1. Option 1 – Payments for Life: Under this option, income is payable periodically prior to the death of the key life, terminating with the last payment due prior to such death.

2. Option 2 – Payments for life with 10, 15, or 20 Years Certain: Under this option, income is payable periodically for 10, 15, or 20 years, as selected, and thereafter until the death of the key life. Should the death of the key life occur before the end of the period selected, the remaining payments are paid to the Beneficiary to the end of such period.

3. Option 3 – Payments Based on Joint Lives: Under this option, income is payable periodically during the joint lifetime of two key lives, and thereafter during the remaining lifetime of the survivor, ceasing with the last payment prior to the survivor's death.

4. Option 4 – Payments for a Certain Period: Under this option,

> income is payable periodically for a specified number of years. The number of years is subject to our then current rules. Should the payee die before the end of the specified number of years, the remaining payments are paid to the Beneficiary to the end of such period.

[*Id.* at A-25.]

The last paragraph of Mr. Becker's annuity contract also clearly states that any Guaranteed Minimum Death Benefit "ends:  (a) once annuity payments begin[.]" [*Id.* at A-38.] Plaintiff does not dispute that "[o]n July 1, 2017, the [a]nnuity [c]ontract defaulted and annuitized . . . when Mr. Becker did not choose one of the payout options." [Plaintiff's Brief at 5.] Thus, the Court finds that the relevant provisions of Mr. Becker's annuity contract with Prudential clearly and unambiguously provide for the annuitization of Mr. Becker's contract per the contract's default payment option as occurred in August 2017.

## C.   The Third Circuit Has Enforced an Annuity Contract with Similar Operative Terms

The Court next considers Plaintiff's contention that the terms of Mr. Becker's annuity contract with Prudential were unfair. [Plaintiff's Brief at 8.] Prudential correctly points to a recent, non-precedential decision from the Third Circuit in *Estate of Gleiberman v. Hartford Life Insurance Co.*, where the Circuit Court considered claims that an annuity contract annuitized without the annuitant's consent pursuant to the contract's default payment option. 94 F. App'x 944, 945 (3d Cir. 2004) (not precedential). The Third Circuit affirmed the District Court's dismissal of claims for unjust enrichment, breach of the implied duty of good faith and fair dealing,

restitution, and breach of fiduciary duty, explaining that the annuity contract at issue "clearly stated the [a]nnuity [c]ommencement [d]ate, the payout options, [and] the default payout option." *Id.* at 947.

Just like the plaintiff in *Glieberman*, Mr. Becker "had not changed the [a]nnuity [date] or selected a payout option," as of his contract's annuity date, at which point the insurer "began making payments under the second option, as was spelled out in the contract." *Id.* at 946. As discussed above, Mr. Becker's annuity contract with Prudential contained the same general operative terms discussed by the Third Circuit in *Glieberman*, including the annuity date, the payout options available, and the default payout option Mr. Becker would receive if he did not make a different election in writing. In *Glieberman*, the Court found that no authority, contractual or otherwise, "require[d] [the insurance company] to send a reminder notice at all, or to send such notice in a specific manner." *Id.* at 947. Mr. Becker's annuity contract, too, is silent with respect to Prudential's obligations to send Mr. Becker reminders of this annuity date. Nevertheless, Prudential sent Mr. Becker not one, but two reminder letters regarding the upcoming annuity date, and even copied his financial advisor, Mr. Cautilli on the second letter.

The Third Circuit explained in *Gleiberman* that "[e]ven assuming that [the insurance company] owed Mr. Gleiberman a fiduciary duty, [it] did not breach that duty" when acting in accordance with the express terms of the parties' contract. *Id.* at 947–48. Finding that the relevant provisions in the annuity contract "were laid out in clear, unambiguous language," the Circuit Court rejected the plaintiff's argument

13

that the annuity contract at issue was a contract of adhesion. *Id.* The Third Circuit explained that there is no special obligation for insurance providers "to point out provisions or to explain clear and unambiguous provisions within the policy," and concluded that "[a]s there is nothing inadvertently unfair or inequitable in the contract, it is valid and enforceable." *Id.* at 947.

Plaintiff attempts to avoid *Gleiberman* as distinguishable in light of the fact that that the insurer there, unlike Prudential in the current controversy, "was willing to (1) reinstate the original contract and defer the annuity for an additional five years or (2) allow Mr. Gleiberman to select one of the other options." [Plaintiff's Brief at 11.] However, that fact alone had no bearing on the Circuit Court's analysis, nor does it impact this Court's. *Id.* at 946. Here, the Court finds that Prudential had no special obligation to provide additional disclosures and did not otherwise owe any duty to Mr. Becker in terms of notifying him of the default payment option under his annuity contract pursuant to its plain and unambiguous terms.

### D.   Plaintiff's Claims Against Prudential

The Court now considers each of the claims specifically alleged against Prudential by Plaintiff in the Complaint.

### 1.   Count One – Breach of Written Contract

As previously stated, nowhere in her Complaint does Plaintiff cite any particular provision of Mr. Becker's annuity contract that Prudential allegedly breached. The Court also finds that Plaintiff's Complaint includes no allegation that Prudential was in breach of the annuity contract when it allowed the contract to

14

annuitize pursuant to its express terms. *See infra.* §§ (IV)(B)–(C). Thus, the Court finds that Plaintiff has failed to state a claim against Prudential for breach of contract. *See RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 444 (D.N.J. 2012) (applying New Jersey law and explaining that "a breach of contract claim requires proof of three elements:  (1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damage to the Plaintiff"). Because Plaintiff has failed to plead the second required element of its breach of contract claim, the Court will dismiss Count One of the Complaint, with prejudice, against Prudential.

### 2.    Count Two – Implied Contract Unjust Enrichment

Just like the unjust enrichment claim brought by the plaintiff in *Glieberman*, Plaintiff's unjust enrichment claim against Prudential must fail because "such liability is precluded where the subject matter of the claim is governed by an express contract, in which case the plaintiff is limited to contractual remedies." *SDC Info. Servs., Inc. v. Intelligroup, Inc.*, Civ. No. 11-05874 (JAP), 2012 WL 2119156, at *2 (D.N.J. June 11, 2012). The Court finds that Plaintiff's allegations against Prudential squarely relate to the annuitization of Mr. Becker's annuity contact pursuant to the default terms of the agreement. Thus, the Court will dismiss Count Two with prejudice.

### 3.    Count Three – Promissory Estoppel

Like Plaintiff's claim for unjust enrichment, Count Three of the Complaint for promissory estoppel seeks a quasi-contractual remedy and must fail because Prudential and Mr. Becker's were parties to a valid and binding agreement that

governs the current dispute. *See Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 141 (D.N.J. 2020) (explaining that "[p]romissory estoppel 'cannot be maintained where a valid contract fully defines the parties' respective rights and obligations'") (*quoting Hillsborough Rare Coins, LLC v. ADT LLC*, Civ. No. 16-916 (MLC), 2017 WL 1731695, at *6 (D.N.J. May 2, 2017) (citations omitted)). The Court also finds that nowhere in the Complaint does Plaintiff allege that Prudential made any extra-contractual promises to Mr. Becker that Mr. Becker relied upon to his detriment. Thus, the Court will dismiss Count Three with prejudice.

### 4.   Count Four – First Party Insurance of Bad Faith

The Court agrees with Prudential's argument that Plaintiff's bad faith claim should be dismissed "because the Complaint fails to allege that Prudential acted in bad faith by providing the annuity benefit promised in the contract." [Docket No. 26-1, at 16.] Specifically, Plaintiff alleges in her Complaint that Prudential acted in bad faith by "depriv[ing] Plaintiff of the benefits of the contracts" and failed to "properly and promptly notify Plaintiff of the July 1, 2017, option deadline." [Docket No. 1-1 ¶¶ 55–56.] However, "[t]o establish a bad faith claim for denial of benefits, a plaintiff must show '(1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim.'" *Johnson v. Liberty Mut. Ins. Co.*, Civ. No. 10-494 (MLC), 2010 WL 2560489, at *2 (D.N.J. June 24, 2010) (*quoting Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 Fed.Appx. 594, 599 (3d Cir.2004)). Here, Plaintiff has not alleged that Prudential lacked a debatable reason for its failure to pay the death benefit to

16

Mr. Becker when the parties' agreement provided for the forfeiture of the death benefit pursuant to the default payment option; Mr. Becker's annuity contract expressly states that the death benefit "ends:  (a) once annuity payments begin[.]" [Docket No. 26-2, Ex. A, at A-38.] Further, and even though it had no legal obligation to do so, Prudential sent Mr. Becker two letter reminders prior to the contract's annuity date. As in *Gleiberman*—and since Mr. Becker's annuity contract clearly and unambiguously provides for the termination of the death benefit as of the annuity date—Plaintiff's claim of bad faith must fail.

### 5.    Count Five – Fraud

The Court finds that Plaintiff fails to satisfy Rule 9(b)'s heightened pleading requirement to "state with particularity the circumstances constituting fraud or mistake" with respect to her fraud claim against Prudential. FED. R. CIV. P. 8(a)(2). "Under New Jersey law, a plaintiff alleging fraud must plead (i) a material representation of fact, (ii) knowledge on the speaker's part that the statement is false, (iii) an intent that the other rely, (iv) actual and reasonable reliance, and (v) resulting damages." *Davis v. Bankers Life & Cas. Co.*, Civ. No. 15-3559 (ES/JAD), 2016 WL 7668452, at *6 (D.N.J. Dec. 23, 2016) (citations omitted). Plaintiffs are able to satisfy Rule 9(b) "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* at *3 (citations omitted). In addition, Plaintiff's must set forth in their allegations "who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* (citations omitted).

17

The Court finds that the allegations set forth by Plaintiff in the Complaint in support of her fraud claim, Count Five, fail to meet the heightened pleading requirement for such claims. Plaintiff vaguely alleges that "the acts and representations made by Defendants were material in inducing the Plaintiff to agree to the terms which had been reached between Defendants and the Plaintiff on the [annuity] [c]ontract." [Docket No. 1-1 ¶ 62.] However, Plaintiff specifies no acts or representations made by or on behalf of Prudential, specifically. The law is also clear that "reasonable reliance . . . cannot be established in the face of clear contradictory language in an insurance policy." *Davis*, 2016 WL at *3 (citations omitted). In the present action, Plaintiff not only fails to plead with requisite specificity any material representation of fact made by or on behalf of Prudential, but also is unable to set forth a valid fraud claim since Mr. Becker's contract with Prudential annuitized pursuant to its clear and unambiguous terms, such that Mr. Becker legally could not have reasonably relied upon any representation to the contrary. Thus, the Court will dismiss Count Five with prejudice.

### 6.    Count Six – Negligent Misrepresentation

As previously discussed with respect to Count Five, Plaintiff does not allege any specific misrepresentation made by or on behalf of Prudential that contradicted the clear and unambiguous terms of Mr. Becker's annuity contract. *Infra.* § (IV)(D)(5). Thus, Plaintiff fails to plead the first element of her negligent misrepresentation claim. *See Elias v. Ungar's Food Prod., Inc.*, 252 F.R.D. 233, 251 (D.N.J. 2008) (explaining that "the elements of a negligent misrepresentation claim

are: (1) defendant negligently made a false communications of material fact; (2) plaintiff justifiably relied upon the misrepresentation; and (3) the reliance resulted in an ascertainable loss or injury") (citations omitted). Further, the Court finds that even if any false representation by or on behalf of Prudential were alleged by Plaintiff, Mr. Becker could not have justifiably relied on any such misrepresentation that contradicted the clear and unambiguous terms of his annuity contract. Thus, Plaintiff has also failed to plead any facts to establish the second element of her negligent misrepresentation claim. The Court will dismiss Count Six with prejudice.

### 7.    Count Seven – Breach of Fiduciary Duty

In her Complaint, Plaintiff alleges that "[t]he insured-insurer relationship between the Plaintiff and Defendants created a fiduciary relationship between them" and that "[a]s a direct result of Defendants' breach of its fiduciary duties and self-dealing" Plaintiff suffered financial loss. [Docket No. 1-1 ¶ 77, 79.] However, this is not an accurate characterization of the applicable law. "Under New Jersey law, an insurer owes its insured a fiduciary duty *only* under certain circumstances." *DeGennaro v. Am. Bankers Ins. Co. of Fla.*, Civ. No. 16-5274 (BRM/DEA), 2017 WL 2693881, at *13 (D.N.J. June 22, 2017), *aff'd*, 737 F. App'x 631 (3d Cir. 2018) (emphasis added) (explaining that a fiduciary duty to the insured exists when the insurer acts as the insured's agent in settling the insured's claims) (citations omitted). Here, Plaintiff has not alleged any special circumstances that would create any fiduciary duties on the part of Prudential. Just like in *Gleiberman*, Plaintiff is unable to maintain a breach of fiduciary duty when the insurer, here Prudential, acted

pursuant to the plain and unambiguous language of its policy with the insured, Mr. Becker. The Court will dismiss Count Seven with prejudice.

### 8. Count Eight – Internationally Causing Injuries/Liability for Intended Consequences

Finally, the Court will dismiss Count Eight with prejudice as Plaintiff has not pled any allegations to support a claim sounding in intentional tort. The Supreme Court of New Jersey explained that the cause of action set forth in Count Eight is a "prima facie tort [which] should not be come a 'catch-all' alternative for every cause of action which cannot stand on its own legs." *Richard A. Pulaski Const. Co. v. Air Frame Hangars, Inc.*, 195 N.J. 457, 470, (2008). Instead, this cause of action recognizes that "one who intentionally causes injury to another is subject to liability to the other for that injury." *Id.* at 467. Plaintiff has not alleged that Prudential, in acting pursuant to the clear and unambiguous terms of its annuity contract with Mr. Becker, engaged in any wrongdoing with the intent of causing injury to Plaintiff. Thus, the Court will dismiss Count Eight with prejudice.

## V.    CONCLUSION

The Court concludes that each claim alleged by Plaintiff against Prudential in the Complaint—Counts One through Eight—fails to state a plausible claim for relief since the annuity contract at issue annuitized pursuant to its clear and unambiguous terms. Thus, for the foregoing reasons, Plaintiff's claims against Prudential shall be dismissed, with prejudice. An accompanying Order as of today's date shall issue.

Date: <u>June 13, 2022</u>                    <u>s/Renée Marie Bumb</u>
                                              Renée Marie Bumb
                                              U.S. District Judge